*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I. B. GILLMORE, Minor.

UNPUBLISHED
February 09, 2026
2:01 PM

No. 374679
Oakland Circuit Court
Family Division
LC No. 22-885330-NA

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor child, IG, under MCL 712A.19(b)(3)(d), (f)(*i*), (f)(*ii*)), (g), and (j).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In November 2013, IG's putative father was murdered. Respondent, who was then sixteen years old and three months pregnant with IG, witnessed the shooting. In July 2014, because of chaos in her home life, respondent and then-three-month-old IG moved in with petitioner (and petitioner's husband and daughter). Petitioner is respondent's godmother. According to petitioner, respondent was never home and was neglectful of IG. In November 2014, respondent was arrested for conspiring to hire someone to murder the man she thought responsible for the death of IG's father. While incarcerated in the Oakland County Jail, respondent agreed to place IG in a limited-guardianship with petitioner. The probate court granted petitioner a limited guardianship over IG in February 2015. The limited-guardianship placement plan stated that petitioner would financially support IG and that respondent and IG would have weekly telephone contact. The plan would continue until respondent was no longer on parole or probation and had successfully completed psychological counseling.

---

[1] IG's putative father is deceased and was not a respondent in the proceedings below.

-1-

In April 2015, respondent pleaded guilty to solicitation to commit murder, MCL 750.157b(2), and in May 2015 was sentenced to a prison term of 81 months to 25 years. On May 23, 2017, respondent was ordered to pay monthly child support to petitioner, with the obligation suspended until 60 days after her release from incarceration. Initially, petitioner brought IG to see respondent while she was incarcerated, visiting respondent 25 times between September 2015 and October 2019. However, the visits happened less frequently as time went on and were eventually discontinued because of the emotional and physical distress it was causing IG, who had been diagnosed with selective mutism and sensory and anxiety disorders. Respondent and petitioner remained in contact through the prison e-mail system. Respondent would also call petitioner, but did not speak to IG on the telephone.

In 2020, petitioner filed a petition to modify the limited-guardianship plan, requesting full guardianship. At a September 2020 guardianship review hearing, petitioner testified that IG was afraid respondent was going to come home and take her away, and that petitioner wanted to protect IG. Respondent denied any plan to do so, but stated that she wanted to form a bond with IG and work toward a smooth transition to being back in IG's life. The probate court found that a therapeutic reintegration plan would be helpful, and it instructed respondent to begin educating herself on parenting children with special needs.

The probate court continued the limited guardianship, ordering that when petitioner and respondent were "ready to discuss/develop a therapeutic reintegration/transition plan (after [respondent]'s release, or shortly prior to, but before in-person parenting time), a petition shall be filed with the court requesting a review hearing date." The probate court instructed petitioner and respondent that they needed to work together, and it modified the guardianship plan to continue until respondent (1) was no longer on parole, (2) had obtained employment, (3) had established housing, (4) had completed a psychological evaluation and followed the assessment recommendations, (5) had completed psychological counseling, (6) had health insurance coverage for IG, and (7) had developed, followed, and completed the therapeutic reintegration plan, including training and education regarding IG's special needs.

In 2021, IG began participating in individual therapy. In May 2021, petitioner notified respondent that she had received paperwork regarding respondent's parole conditions and that the conditions included a no-contact order between the two of them, which petitioner stated she was attempting to have removed. On August 3, 2021, respondent was granted parole with fifteen months of community supervision; her parole conditions included an order not to contact petitioner or petitioner's daughter. In September 2021, respondent moved to modify the child support order, requesting that the amount be decreased because she was still seeking employment. On October 19, 2021, the parties appeared at a hearing and petitioner requested that she be permitted to waive base child support, explaining she was concerned about respondent's ability to financially support herself. Respondent's monthly child support obligation was reduced to $38 in reimbursement to the state of Michigan for IG's Medicaid coverage.

On November 3, 2022, respondent completed her parole and, on the same day, filed a petition to terminate the limited guardianship. On December 6, 2022, petitioner filed a petition to terminate respondent's parental rights to IG, alleging that respondent had failed to comply with the limited-guardianship plan, could not care for IG's special needs, and had failed to provide financial support, and that IG's therapist, Heather Murphy, had recommended that IG have no

contact with respondent because it would retraumatize her. In December 2022, the trial court authorized the petition and suspended respondent's parenting time.

A combined adjudication bench trial and dispositional hearing was held on the petition beginning in July 2024 and concluding in October 2024. At the trial, the trial court allowed Murphy to testify, over respondent's objection, as an expert in child therapy. Murphy testified that she had witnessed IG grow fearful and go mute at the mention of respondent's name, and she opined that IG had regressed in coping with her post-traumatic stress disorder (PTSD), anxiety, and selective mutism since the proceedings regarding respondent's parental rights had begun. Murphy did not believe that it was in IG's best interests to participate in therapy with respondent, because IG did not have a bond with respondent and viewed her as someone trying to take her away from her family.

At the end of the combined proceeding, the trial court found that petitioner had proven by a preponderance of the evidence that statutory grounds existed to support exercising jurisdiction under MCL 712A.2(b)(4) and (6), and had proven by clear and convincing evidence that statutory grounds existed to support terminating respondent's parental rights under MCL 712A.19b(3)(d), (f), (g), and (j). At a best-interest hearing held in January 2025, respondent declined to contest petitioner's evidence or present her own arguments or evidence concerning IG's best interests. The trial court found that terminating respondent's parental rights was in IG's best interests, and entered an order terminating respondent's parental rights to IG. This appeal followed.

## II. EXPERT WITNESS TESTIMONY

Respondent argues that the trial court abused its discretion by allowing Murphy to testify as an expert witness. We disagree. "A trial court's ruling regarding the qualification of a proposed expert witness to testify is reviewed for an abuse of discretion." *Cox v Hartman*, 322 Mich App 292, 298; 911 NW2d 219 (2017). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Id*. To the extent review of an evidentiary issue "requires interpretation of the Michigan Rules of Evidence, an issue of law is presented, which this Court reviews de novo." *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007).

"MRE 702 establishes prerequisites for the admission of expert witness testimony." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). MRE 702 states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"The party presenting the expert bears the burden of persuading the trial court that the expert has the necessary qualifications and the specialized knowledge that will aid the fact-finder in understanding the evidence or determining a fact in issue." *Surman v Surman*, 277 Mich App 287,

308; 745 NW2d 802 (2007). "A witness may be qualified as an expert by knowledge, skill, experience, training, or education." *Id.*

Respondent argues that Murphy should not have been allowed to testify as an expert because petitioner failed to establish the foundational requirements for her testimony, but respondent does not explain specifically how petitioner failed to do so. It appears that the crux of respondent's argument is that because Murphy had never previously testified as an expert witness, she was not qualified to testify regarding her therapy sessions with IG. However, the mere fact that Murphy had not previously testified as an expert did not disqualify her from testifying, because a witness "may be qualified as an expert by knowledge, skill, experience, training, or education." *Surman*, 277 Mich App at 308. The record shows that Murphy had been working in the social work field for 15 years and was a licensed play therapist supervisor who had been specializing in children's therapy for the past six years. Murphy had a master's degree in social work, a bachelor's degree in family life education, and an associate's degree in early childhood development. Previously, Murphy had been a foster care worker, conducting child assessments and counseling families, and she estimated that she had worked on a dozen cases specifically involving the reunification of children with incarcerated parents. Murphy had testified numerous times as a foster care worker, but had never been presented as an expert and had never testified in the area of child therapy. Murphy participated in continuing education and had received some specific training regarding testifying as an expert. On this record, considering Murphy's knowledge, skills, experience, training, and education in the area of child therapy, the trial court did not abuse its discretion by allowing her to testify as an expert witness, under MRE 702, in the area of child therapy.

Further, even if the trial court had abused its discretion by allowing Murphy to testify as an expert, any error was harmless. MRE 701,[2] which permits the admission of lay opinion testimony, states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In this case, Murphy's testimony was related to her observations and findings during her therapy sessions with IG, and was almost entirely within the limitations of MRE 701. Murphy testified that she had witnessed IG's trauma responses first-hand, including the responses that occurred merely from IG hearing her mother's name. Murphy's testimony regarding IG's trauma was not based solely on her specialized knowledge as an expert, but on also on her perceptions as a lay witness. MRE 701. Consequently, even if she were not qualified as an expert, Murphy's testimony would have been admissible as lay testimony. See *People v McLaughlin*, 258 Mich App 635, 657-658; 672 NW2d 860 (2003) (finding harmless error where witness's expert testimony fell "almost entirely" within the limitations of MRE 701).

---

[2] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. This Court relies on the version of MRE 701 in effect at the time of trial.

## III. ADJUDICATION

Respondent argues that the trial court clearly erred by finding that statutory grounds existed to warrant the exercise of its jurisdiction under MCL 712A.2b. We disagree. This Court reviews "the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (citation omitted). "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

"To initiate a child protective proceeding," a petitioner "must file in the family division of the circuit court a petition containing facts that constitute an offense against the child under the juvenile code," MCL 712A.1 *et seq*. *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014).

> During the adjudicative phase, the court considers the propriety of taking jurisdiction over the subject child. This can be done in two ways. First, a parent may plead to the allegations in a jurisdictional petition, thereby bringing the child under the court's protection. Second, the parent may demand a trial (bench or jury) to contest the allegations. [*In re Thompson*, 318 Mich App 375, 378; 897 NW2d 758 (2016).]

At an adjudication trial, the petitioner has the burden of proving, by a preponderance of the evidence, that one or more of the statutory grounds alleged in the petition supports the trial court exercising jurisdiction. MCR 3.972(C)(1); MCR 3.977(E)(2). In this case, petitioner alleged that jurisdiction existed under MCL 712A.2(b)(4) and (6).

MCL 712A.2(b)(4) allows the trial court to exercise jurisdiction when the child's parent "has substantially failed, without good cause, to comply with a limited guardianship placement plan described in . . . MCL 700.5205, regarding the juvenile." Respondent argues that she did not substantially fail to comply with the limited-guardianship plan because she exercised parenting time until petitioner unilaterally terminated it. However, parenting time visits or contacts with IG while in prison were never part of the limited-guardianship plan. The limited-guardianship plan, as modified in September 2020, required respondent to petition for a review hearing, during which the parties would formulate a therapeutic reintegration parenting time plan to help respondent and IG develop a bond. Respondent failed to do this. Despite being instructed to begin educating herself on IG's various diagnoses and special needs, respondent never did so, claiming that she was unaware of IG's *specific* diagnoses and wanted to speak with a doctor, notwithstanding that petitioner had sent her a copy of IG's initial diagnosis. Moreover, respondent was at least aware that IG had some type of sensory disorder, but she made no effort to learn about sensory disorders in general. Respondent asserted at the adjudication hearing that she completed parenting classes while incarcerated, but she offered no proof of that and had not engaged in any education about parenting a special needs child.

Further, the limited-guardianship plan was to continue until respondent completed parole, obtained employment, established housing, completed a psychological evaluation and counseling,

and obtained health insurance for IG. While respondent successfully completed parole, the trial court found that respondent failed to offer proof that she had substantially complied with any of the remaining requirements. Respondent claimed that she had maintained employment and offered an e-mail from her boss as verification; however, she offered no supporting evidence such as pay stubs or tax documents, claiming that she had been paid in cash. The trial court noted that respondent had moved several times since leaving prison, and although respondent testified that she had recently rented her own two-bedroom home, no supporting documentation such as a lease or rental agreement was provided to the trial court. Respondent had not yet completed a psychological evaluation, although she provided evidence that she was currently in individual therapy. Respondent never obtained health insurance for IG, despite stating that she was working on adding IG to her insurance. Given the record, the trial court did not clearly err by finding that respondent had substantially failed to comply with the limited-guardianship plan. *BZ*, 264 Mich App at 295.

Respondent argues that the no-contact condition of her parole constituted "good cause" that excused her failure to substantially comply with the limited-guardianship plan. We disagree. "Good cause" is defined as a "legally sufficient or substantial reason" for noncompliance. *In re Utrera*, 281 Mich App 1, 22; 761 NW2d 253 (2008). Respondent argues that the no-contact order severely limited what actions she could take while on parole, and that she was afraid of violating parole and returning to prison. However, respondent ignores that she had ample time before the no-contact order took effect yet failed to take any action. Respondent was made aware in May 2021 that the no-contact order would be a condition of her parole when she was released in August 2021, but she made no effort during those three months to contact the probate court to address any difficulty the no-contact order might cause respondent in complying with the limited-guardianship plan. Further, when respondent was released on parole, she moved to modify child support despite the no-contact order, and did not suffer any repercussions concerning her parole. According to respondent, her parole officer had told her that she was not allowed to file anything in the guardianship case because of the no-contact order. However, even assuming this to be true, it does not explain why respondent failed to comply with the remaining terms of her limited-guardianship plan that did not require contact with petitioner. Respondent has not established that the no-contact order was a legally sufficient excuse for failing to comply with the limited-guardianship plan, and the trial court did not clearly err when it determined that respondent had failed to establish good cause. *Id.*[3] The trial court properly exercised jurisdiction.

IV. STATUTORY GROUNDS FOR TERMINATION

Respondent argues the trial court clearly erred by finding that statutory grounds existed to support terminating respondent's parental rights. We disagree. "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling

---

[3] Because the trial court correctly took jurisdiction over IG under MCL 712A.2(b)(4), we need not consider whether jurisdiction was also appropriate under MCL 712A.2(b)(6). See *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008) ("In order to find that a child comes within the court's jurisdiction, *at least one* statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven . . . .") (emphasis added).

that termination is in the children's best interests." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted). Clear error exists when "some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Baham*, 331 Mich App 737, 751; 954 NW2d 529 (2020) (quotation marks and citation omitted). This Court must give regard to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Mota*, 334 Mich App at 320 (quotation marks omitted).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020).

> At the termination hearing, the trial court, in rendering its termination decision under MCL 712A.19b, may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.997(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.997(H). [*In re Mota,* 334 Mich App 300, 316; 964 NW2d 881 (2020).]

The trial court found that statutory grounds for terminating respondent's parental rights had been established under MCL 712A.19b(3)(d), which authorizes termination when:

> (d) The child's parent has placed the child in a limited guardianship under section 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5205, and has substantially failed, without good cause, to comply with a limited guardianship placement plan described in section 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5205, regarding the child to the extent that the noncompliance has resulted in a disruption of the parent-child relationship.

In order to make such a finding, the trial court was required to find that: (1) IG was placed in a limited guardianship; (2) respondent "substantially failed, without good cause," to comply with the guardianship plan; and (3) respondent's noncompliance disrupted the parent-child relationship. MCL 712A.19b(3)(d). It is undisputed IG was in a limited guardianship with petitioner. The second requirement mirrors the language used in MCL 712A.2(b)(4), and as discussed, respondent failed to comply with the limited-guardianship plan without good cause. Respondent failed to file a petition to implement the therapeutic reintegration plan for her parenting time with IG, failed to make any effort to educate herself regarding IG's special needs, and offered little or no evidence that she had obtained stable housing and employment, completed a psychological evaluation and counseling, or obtained health insurance for IG. Respondent made no effort to obtain a hearing with the probate court in the three months before the no-contact order was implemented in order to address potential issues caused by the order, and made no effort to address any of the other terms of the limited-guardianship plan while the no-contact order was in effect. Accordingly, the trial court did not clearly err by determining, by clear and convincing evidence, that respondent "substantially failed, without good cause, to comply with a limited guardianship placement plan." MCL 712A.19b(3)(d).

Additionally, the trial court did not clearly err by determining that respondent's noncompliance disrupted her relationship with IG. The record showed that respondent had not bonded with IG before her incarceration and that IG suffered extensive trauma from having contact with respondent in prison, to the point that she would vomit on the way there and suffered nervous tics on the way home. IG would repeatedly ask to go home during such contacts, refused to speak to respondent on the telephone, and went mute at the mention of respondent's name. Respondent and IG had not had contact in nearly four years by the end of the adjudication trial, and IG suffered from severe anxiety at the thought of reuniting with respondent.[4] Consequently, the trial court's determination that the parent-child relationship had been disrupted was not clearly erroneous, and the termination of respondent's parental rights under MCL 712A.19b(3)(d) was proper.[5]

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel

---

[4] Respondent also argues that petitioner was not a credible witness; however, considering that the trial court cited petitioner's testimony as a basis for its factual findings, the trial court evidently found petitioner's testimony credible. We give deference to the trial court's credibility determinations of the witnesses who appear before it. See *LaFrance*, 306 Mich App at 723.

[5] Because termination was proper under subsection (d), we need not consider whether the trial court clearly erred by finding that termination was proper under MCL 712A.19b(3)(f), (g), and (j). See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009) (noting DHHS need only establish one statutory ground for termination).